LOVELL–McCONNELL MFG. CO. v. ORIENTAL RUBBER & SUPPLY CO., Inc.

(District Court, E. D. New York. July 2, 1915.)

PATENTS ⬥⟶328—VALIDITY AND INFRINGEMENT—AUTOMOBILE HORN.

The Hutchison patent, No. 1,120,057, for an automobile horn, was not anticipated, and discloses patentable invention; also, *held* infringed.

In Equity. Suit by the Lovell-McConnell Manufacturing Company against the Oriental Rubber & Supply Company, Incorporated. On final hearing. Decree for plaintiff.

George C. Dean, of New York City (Irving M. Obrieght, of New York City, of counsel), for plaintiff.

Howard P. Denison and Eugene A. Thompson, both of Syracuse, N. Y., for defendant.

CHATFIELD, District Judge. The plaintiff has alleged infringement of patent No. 1,120,057, issued to the plaintiff as assignee of Miller Reese Hutchison, upon application filed August 14, 1914, under No.

⬥⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

856,826, as a division of original application filed October 26, 1909, under No. 524,762.

The patent shows a horn or signal, consisting of a diaphragm held between two circular clamping members, with a wear piece upon one side of the diaphragm, actuated by cams upon the face of a disk, rotated by the armature shaft of an electric motor; this shaft being perpendicular to the plane of the diaphragm and with means for longitudinal adjustment. In other horns of the prior art, the electric motor had been so arranged as to position the armature or driving shaft in a plane parallel to that of the disk of the diaphragm.

While it has been recognized that no invention was needed to merely rotate the motor or the armature shaft into a position vertical to that of the disk of the diaphragm, and while it would not involve invention to change the cam surfaces from the periphery to the face of the revolving disk, nevertheless the patentee in his present application claims novelty and invention by so positioning the motor as to make its armature shaft perpendicular to and eccentric with the center of the diaphragm, and to provide a compact, useful, commercial structure, with better opportunity for adjustment by affixing the frame carrying the electric motor and the armature shaft thereof in some rigid and simple way to one of the clamping members of the diaphragm. He includes in the combination a limitation upon the size of the frame; but this, of course, is not patentable novelty of itself.

In the drawings accompanying the patent, the frame furnishing the support for the motor and armature shaft is substantially integral with the ring forming one of the clamping members. The defendant alleges noninfringement from the fact that its device presents this frame, attached by a thread and screw to the ring forming the clamping member, and with a tight case inclosing the motor and its attachments, with openings for the electrical contact wires.

The action has been narrowed down to one claim of the patent for the purpose of saving time and simplifying the issue, according to the plaintiff. The defendant, without admitting these propositions, proceeds upon the admission by the plaintiff that this particular claim is the only one concerned in the action, and we need not look into the question of motive as the possibility of maintaining the action depends upon the validity and infringement of this particular claim. This claim is as follows:

"12. In an alarm or signaling device, a diaphragm, a pair of opposed diaphragm clamping members, one of said members having a sound outlet opening therethrough concentric with the diaphragm and the other of said members carrying a rearwardly extending cylindrical motor casing eccentrically disposed in respect to said diaphragm, a motor within said casing having its armature shaft presented endwise to said diaphragm, a wear piece on said diaphragm at the center of the latter, a face cam carried by said armature shaft and engaging with said wear piece, the eccentricity of said motor casing in respect to said diaphragm being substantially equal to the effective radius of said face cam, and means for adjusting the armature shaft and rotor axially to vary the degree of overlap of the face cam projections on said wear piece."

It will be seen that the language of this claim calls for a diaphragm, two clamping members, one with a sound outlet opening, and the other "carrying a rearwardly extending cylindrical motor casing eccentrically disposed," etc., "a motor within said casing," etc.

This claim does not require, however, the narrow construction or single form of device shown by the drawing in which the word "carrying" would be equivalent to comprising or consisting of. The language of the claim is plainly disclosed by the drawing, as it would not involve invention to fasten a casing by a screw thread or by individual screws. Nor would it involve invention to have a separate frame within the case, even though to make the case and the frame identical in whole or in part might be simpler in the number of parts.

The defendant's structure, however, reads directly upon the claim, and the infringement is evident.

The record shows certain interferences in the Patent Office and actions against the Commissioner of Patents. These interferences resulted finally in an opinion by the commissioner himself to the effect that adjustment of an armature shaft, arranged perpendicularly or at an angle to the diaphragm less than a right angle, or even when arranged parallel to the plane of the diaphragm, was old and obvious and could not be considered an invention over the prior art. Also, that the mere transfer or change from a parallel to a vertical position of the armature shaft, with a change of cams to the face of the disk, did not involve invention over the prior art, and that adjustment by means of a thread or set screw so as to move a shaft closer to the diaphragm was not invention. The commissioner did, however, hold that the intentional change of position of the motor so as to put the shaft in a position where it could be adjusted, coupled with the recognition of the fact that adjustment could be thus best made, did involve invention and the patent in suit issued. This applied the idea of combining these two changes, and also of so locating the shaft as to make it eccentric, and thus to enable the cam surfaces to contact with the exact center; that is, the wear piece upon the middle of the diaphragm.

The record shows that in the earlier Hutchison patent application (1909) these ideas of including the motor in the casing and adjusting the contact by moving the parts closer to or further away from the diaphragm by means of an adjusting screw, eccentric position of the shaft with reference to the center of the diaphragm, and the location of the shaft at such position as to enable the wear piece to be placed at the center of the diaphragm, were described. But the other Hutchison patents, Nos. 923,048, 923,049, and 923,122, since held invalid, did not claim or describe (in the form in which they were issued) the combination of the patent in suit.

The only other patent cited, viz., that of Bapst & Falize, 11,390, of July 8, 1887, has a figure (7) showing a drive shaft at right angles to the plane of the diaphragm and eccentric to a line through its center. But Bapst & Falize was a mere application of a ratchet upon a fixed axis, so as to contact with a long spine or point projecting from the diaphragm, and the mere shape of the parts necessitated the structure.

The claim of the patent in suit is a combination of mechanical parts intended and adapted to be convenient and desirable in use, and at the same time to perform mechanical functions different from the mere aggregation of the old elements used therein.

Such patents as Arlitz, 979,246, December 20, 1910; Aufiero, 988,-537, April 4, 1911; Weiss & Walther, 1,028,980, June 11, 1912; Weiss, 1,029,521, June 11, 1912; Rubes, 1,049,272, December 31, 1912; Rubes, 1,059,769, April 22, 1913—all issued prior to the patent in suit on later applications, show the various means by which, in the few methods preceding the allowance of this Hutchison patent, different inventors sought to overcome the difficulties presented by attempting to actuate a diaphragm by cam surfaces rotating upon the face of a disk placed upon an axis perpendicular to the diaphragm.

The Hutchison device, while suggested before these later patents, and perhaps even having been avoided by these inventors, cannot be held invalid as anticipated thereby, and, if the idea involves invention and was patentable at the time of its conception by Hutchison, it would plainly be patentable as a combination of parts over these various patents which claim invention for attempting to reach the same results with less satisfactory structures.

It would seem that the simple idea of this device shows more than the mere aggregation of parts or the application of the ordinary principles of mechanics, and that the action of the Patent Office was correct.

As to the defense of double patenting, it is only necessary to state that the particular device was not shown or described and was not even a possible form of the structure which Hutchison sought to claim in his three earlier patents. The features illustrated in those patents are mere mechanical parts, which are now combined in a different way to produce new results in the present structure, and, as this structure is patentable of itself, it must be held valid over the earlier Hutchison devices.

The plaintiff may have a decree.